In the Matter of EDWARD GRIEST et al., Petitioners, against VERN E. HOOEY et al., Constituting the Board of Appeals of the City of Corning, et al., Respondents.

Supreme Court, Special Term, Steuben County, March 5, 1954.

*Harry Treinin* for petitioners.

*Ransom Pratt, City Attorney,* for Vern E. Hooey and others, constituting the Board of Appeals, and another, respondents.

WITMER, J. Petitioners ask the court to annul and set aside the action of the zoning board of appeals of the City of Corning in granting the application of the respondents, Edward Jones and Thelma B. Jones, for a variance, and authorizing the issuance to them of a permit to construct a retail tire store mostly upon lots 27 and 28 on South Place in the city of Corning.

Respondents Jones own fifteen contiguous lots, ten of which, numbered 48 through 57, front on the east side of Centerway and extend from South Place on the south to North Place on the north a distance of 230 feet, and are 130 feet deep from the east line of Centerway. Three lots, Nos. 27, 28 and 29, are next east of the southerly five lots of the ten above-mentioned

and front on South Place. They are each 53.4 feet wide and 115 feet deep. The two remaining lots, Nos. 26 and 25, are next east of the northerly five lots of the ten above-mentioned, and face on North Place. They are each 53.4 feet wide and 115 feet deep, and in the rear adjoin lots 27 and 28. Lot 29 is next east of lot 28, and there is a residence thereon occupied by a tenant.

In 1949, the City of Corning adopted its zoning ordinance. By it, the area on the east side of Centerway and extending 150 feet easterly therefrom, was designated as a business district, and the area east of such district was designated as residential. Petitioners herein are residents of this residential district and live near said lots 25 through 28. Respondents Jones owned said fifteen lots prior to and at the time the zoning ordinance was adopted.

Respondent, Edward Jones, has a business building on the lots which front on the east side of Centerway, in which he operates the business of Jones Motor Company, an automobile sales and service agency. In connection with such business, he has used lots 25 through 28 for storage space for automobiles from a time antedating the adoption of the zoning ordinance. It is observed that the west twenty feet of lots 26 and 27, which are immediately contiguous to the rear of the Centerway lots, is within the business district.

In the spring of 1953, respondents Jones made application to the superintendent of building construction of Corning for a permit to erect principally on lots 27 and 28 and partly on the rear of lots 25 and 26 a building for use as a retail tire store, said building to be approximately forty-five and one-half feet wide, ninety-two feet long, and twelve and one-half feet tall. The superintendent denied the application because the lots are largely in the residential district. Respondents Jones then applied to the zoning board of appeals of Corning for a variance, pursuant to article XVI, B. and C., of the zoning ordinance, to permit their use of an area sixty feet in depth next east of the business district in connection with their Jones Motor Company business, which additional area would accommodate the retail store building they desired to erect. At a meeting of the board of appeals held on April 23, 1953, of which notice was given to no one except the superintendent of building construction and respondents Jones, the board of appeals made and filed its decision authorizing the superintendent to issue a permit to the respondents Jones according to

the plans submitted. The plans showed that the building would be set back from South Place a distance of twenty-five feet and would be thirty feet from the east line of lots 28 and 25.

Pursuant to the Labor Law and the Industrial Code of the State of New York, respondents Jones then made application to the Department of Labor at Albany for permission to erect the structure. On September 3, 1953, sixty-eight area residents, including petitioners herein, presented a petition to the board of appeals objecting to the erection of the building by the respondents Jones, and it was received and filed by the board. On October 28, 1953, the State Department of Labor certified its conditional approval and recommended issuance of the building permit if the owners met the conditions. Respondents Jones then submitted plans to conform to such conditions. On December 8, 1953, the superintendent of building construction issued a building permit to respondents Jones. On December 10, 1953, at a meeting of the board of appeals the area residents, through attorney Harry Treinin, argued their objections to the proposed building. The only action taken by the board at the meeting on this subject was to re-examine the later plans submitted by respondents Jones, and when it was discovered that the plans were different from the ones originally filed and upon which the board acted in authorizing issuance of the permit, in that the later plans provided for a setback of twenty feet instead of twenty-five feet from South Place, the board voted to revoke the permit issued December 8, 1953, because it did not conform to the board's authorization of April 23, 1953. On December 17, 1953, respondents Jones resubmitted plans which conformed to the original plans of April, 1953. The board stated at its meeting on that day that it would take no action thereon since its action of April 23, 1953, sufficed and there was no occasion for it to act further. On December 18, 1953, the superintendent of building construction issued a permit to respondents Jones in conformity with the board's authorization of April 23, 1953. On January 4, 1954, petitioners presented to the court the petition herein pursuant to subdivision 1 of section 82 of the General City Law.

Petitioners contend that the action of the board of appeals on April 23, 1953, was contrary to law and that it is a nullity because no notice of the meeting was given to them nor to others similarly situated. Respondents answer that neither the statute nor the ordinance, nor any rule or regulation of the board of appeals, requires notice to petitioners, and that since this proceeding was not instituted within thirty days of the filing

of the decision of the board of appeals on April 23, 1953 (General City Law, § 82, subd. 1; Civ. Prac. Act, § 1286), it is untimely and must be dismissed.

The application by the area residents, including petitioners, in September, and the meetings of the board of appeals in December, 1953, did not serve to extend the time within which this proceeding to review must be brought, because no new facts were presented to nor considered by the board of appeals, and indeed the board took no action upon petitioners' application. (*Matter of Weinstock* v. *Hammond,* 270 N. Y. 64; *Matter of Hall* v. *Leonard,* 260 App. Div. 591, 595, affd. 285 N. Y. 719; *Campbell* v. *Nassau County,* 273 App. Div. 785; *Matter of Canzano* v. *Hanley,* 188 Misc. 167; *Matter of Harrington* v. *Coster,* 194 Misc. 577; *Matter of Mallen* v. *Morton,* 199 Misc. 805, 811; *Rosenblatt* v. *Finkelstein,* 84 N. Y. S. 2d 193; *Fleischer* v. *Murdock,* 62 N. Y. S. 2d 417.) Moreover in the absence of new facts, the board of appeals would have had no right to reopen its decision of April 23, 1953, and render a new decision even had it wished to do so. (*Matter of Collins* v. *Board of Stds. & Appeals,* 253 N. Y. 594; *Town of Greece* v. *Smith,* 256 App. Div. 886; *Matter of Riker* v. *Board of Stds. & Appeals,* 225 App. Div. 570; and cf. *Matter of Reed* v. *Board of Stds. & Appeals,* 230 App. Div. 21, 25, affd. 255 N. Y. 126.) Whether there is such a change of facts or circumstances as to justify a rehearing is primarily for the board of appeals to determine on the application for rehearing. (*Matter of Amer. Seminary of the Bible* v. *Board of Stds. & Appeals,* 280 App. Div. 792; *Ellsworth Realty Co.* v. *Kramer,* 268 App. Div. 824.) The board found no new facts justifying a reopening of the matter, and there is no basis in this proceeding for the court to disagree with the board in this respect.

Thus, petitioners on January 4, 1954, have asked this court to review the decision of the board of appeals filed in its office on April 23, 1953. The petition is untimely (*Pallante* v. *Board of Stds. & Appeals,* 245 App. Div. 729; *Matter of Canzano* v. *Hanley, supra,* 188 Misc. 167; *Matter of Mallen* v. *Morton, supra,* 199 Misc. 805, 811; *Fleischer* v. *Murdock, supra,* 62 N. Y. S. 2d 417), and it must be dismissed unless the action of the board of appeals was illegal for lack of notice to petitioners of the meeting of April 23, 1953.

Subdivision 4 of section 81 of the General City Law is part of the statutory basis for the Zoning Ordinance of Corning. It provides in part as follows: ." The board of appeals shall fix a reasonable time for the hearing of the appeal and give due notice thereof to the parties, and decide the same within reason-

able time." The Zoning Ordinance of Corning (art. XVI, C., subd. 2) provides as follows: " Variances. Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of these regulation (sic), the Board of Appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of this ordinance so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done."

It is to be noted that this section of the ordinance makes no provision for notice. It is presumed, however, that the provisions of subdivision 4 of section 81 of the General City Law above-quoted apply to and must be read into the ordinance. Subdivision 3 of article XVI, C., of the ordinance authorizes special exceptions in specified cases " after due notice ", but it does not apply to this case. Counsel have advised the court that the board of appeals has adopted no rule or regulation requiring notice of an application for a variance.

It is observed that the notice required by the statute (General City Law, § 81, subd. 4) is " to the parties ". Neighboring owners, such as petitioners herein, were not parties to that appeal proceeding. (*Ottinger* v. *Arenal Realty Co.,* 257 N. Y. 371.) As citizens and members of the public only, they are presumed to have notice of decisions filed in the clerk's office. (*Matter of Ambrosio* v. *Zoning Bd. of Appeals of Huntington,* 196 Misc. 1005, 1008.)

In *Matter of Gazan* v. *Corbett* (100 N. Y. S. 2d 429, revd. 278 App. Div. 953, affd. 304 N. Y. 920, remittitur amd. 305 N. Y. 693), the Special Term held that, where a town board after hearing granted a change in zoning classification from residential to industrial, and where thereafter the board of appeals after publishing notice in the official paper and mailing notice to the applicants, granted a variance to permit a public dump and incinerator, without actual notice to adjoining owners, the action was a nullity. It held that the adjoining owners were necessary parties to the proceeding and that under the ordinance which required mailing of notice " to the parties ", failure to mail to the adjoining owners rendered the action illegal. This ruling was contrary to that of *Ottinger* v. *Arenal Realty Co.* (257 N. Y. 371, *supra*), and it was reversed on the authority thereof.

The Special Term in *Matter of Gazan* v. *Corbett* (*supra*), also deemed controlling the case of *Mullane* v. *Central Hanover Bank & Trust Co.* (339 U. S. 306), and held that the granting of

the variance deprived the adjoining owners of property without due process of law. This holding was likewise reversed on appeal.

This writer is recorded as believing firmly in the necessity for due notice. (*Matter of Security Trust Co. of Rochester*, 189 Misc. 748, 757, affd. 277 App. Div. 837, which decision gave rise to the proceeding culminating in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, *supra,* and see below, 274 App. Div. 772, dissenting opinion by VAN VOORHIS, J.) There, however, we were dealing with a person's interest in property owned by him. In the case at bar, as in the *Matter of Gazan* v. *Corbett* case (*supra*), the adjoining owners had no property interest in the premises as to which the variance was granted. Without the zoning ordinance petitioners in the case at bar would have no basis for objecting to the erection of the proposed building and to the proposed use thereof by the respondents Jones. Thus, petitioners are in the position of objecting in part to the ordinance upon which any rights they may have herein depend.

For some reason known only to the Legislature a zoning board of appeals of a town, when acting upon appeal, must give public notice of hearing thereof " by the publication in the official paper of a notice of such hearing * * * and * * * mail notices thereof to the parties" (Town Law, § 267, subd. 5), but as quoted earlier, the zoning board of a city is not required by the statute to publish (General City Law, § 81, subd. 4). Since the board of appeals of Corning acted in accordance with its ordinance and the General City Law under which it was created, its action herein can only be successfully attacked if it is found that the statute is unconstitutional for failure to require publication of notice of hearing. (See *Ottinger* v. *Arenal Realty Co., supra,* and *Matter of Gazan* v. *Corbett, supra.*) In the *Ottinger* case the court upheld the statute in which the provision for notice was substantially the same as that in subdivision 4 of section 81 of the General City Law, no publication being required. The zoning ordinance itself, however, in that case provided: " Before taking any action authorized in this section the Board of Appeals shall give public notice and hearing ", and the rules and regulations of the zoning board of appeals provided for " publication in the Bulletin of the Board " of notice of hearing. The court held that the statute was valid and that publication as provided in the ordinance was sufficient notice to neighboring owners. On this subject the court said (257 N. Y. 371, 377) : " The ' parties ' to the appeal are the

owner complaining of the order, and the public officer who has made it. Neighboring property owners, not being parties, derive no right to notice from the provisions of the charter. Whatever right to notice belongs to persons other than the parties, is not built upon the statute. It comes to them either from the rules of the Board itself or from the general zoning resolution, adopted by the Board of Estimate and Apportionment '', and at page 378 the court said: '' The public notice necessary upon an application for a variance from the general zoning resolution is one prescribed by the resolution, and not by the charter or indeed by any statute '', and at page 379 the court said: '' Public, in any event, the hearing is, even if better forms of publicity could be invented by one bent upon reform. The law does not guarantee the efficacy of its processes to carry notice home to every interested mind. This is so even where constitutional rights would be infringed if publication were omitted. It is so, a fortiori, where publication is an act of grace. Land may be condemned and property interests divested, though the expropriated owner, residing in another State, has never seen the summons that warns him to defend his rights. Still more flexible are the forms available where nothing would be divested nor any right infringed if the proceeding were conducted without notice from opening to close. A permit granted by the board for a non-conforming use does not take from the public or from any member of the public an interest or easement in the land exempted from the general rule. The zoning resolution might be repealed overnight without violating the Constitution. Whatever right to a preliminary notice belongs to the public or to any of the members of the public has its origin in the resolution and is measured by its terms.''

Sympathetic as this court is with the viewpoint of the petitioners with respect to the lack of practical notice, it is in no position to grant relief herein. A remedy of petitioners and other citizens of Corning, if they wish one, is to take such political action as need be to cause the zoning ordinance to be amended or the board of appeals to adopt rules calculated to give practical notice to owners who may be affected by action of the board upon a hearing. As Judge CARDOZO said in the *Ottinger* case (257 N. Y. 382–383, *supra*): '' Whether added safeguards should be adopted to give better assurance that the proceedings of the board shall be brought to the notice of interested owners, we do not undertake to say. If such safeguards are necessary, the remedy must be found either in new and more precise rules to be adopted by the board or in an

amendment of the statute or the zoning resolution. \* \* \* We take the statute and the resolution as we find them, and fix the remedy accordingly.''

In dismissing the petition herein the court is not encumbered with any feeling that an injustice has resulted from the action of the board of appeals in this case. Upon the merits it appears that the board was fully justified in exercising its discretion as they did in authorizing the issuance of the permit, and this court would not be justified, if it felt so inclined, to substitute its judgment for that of the board. (*People ex rel. Sullivan* v. *McLaughlin,* 266 N. Y. 519; *Matter of Reed* v. *Board of Stds. & Appeals,* 255 N. Y. 126; *Matter of Calcagno* v. *Town Bd. of Webster,* 265 App. Div. 687, affd. 291 N. Y. 701; *Matter of Holy Sepulchre Cemetery* v. *Board of Appeals of Town of Greece,* 271 App. Div. 33, 40; *Matter of Magde* v. *Crowley,* 200 Misc. 109; *Matter of Arlington* v. *Board of Stds. & Appeals,* 204 Misc. 395.)

Submit order dismissing petition.